[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an action for dissolution of a marriage brought by the plaintiff wife against the defendant husband. The parties were married on November 17, 1967 in Cos Cob, Connecticut. There are four adult children issue of this marriage.
Neither party has received any public assistance. Both parties have lived within the state for more than one year prior to the institution of this action. Both parties agree that the marriage has broken down irretrievably.
The plaintiff is 52 years of age and the defendant is 57 years old. Neither has any serious health problems although CT Page 7828 the defendant claims that he has had benign polyps in his colon and has had some problems with his back. Neither problem seems disabling. The plaintiff graduated from high school, and the defendant received GED certificate while in the service after completing three years of high school. The ability of each to acquire future assets is relatively even if their present assets are distributed equitably.
This is a 24 year marriage which was never a marriage of true minds. The defendant's reason for marrying the plaintiff was that he was in love with their first child, Erica, and when the plaintiff told him she was planning to move to Virginia where her brother lived, the defendant then agreed to get married so that he would have access to Erica. At that time the plaintiff was also pregnant with the second child fathered by the defendant.
The parties did not live together for several months after the marriage. The plaintiff lived with the first child in a small apartment while the defendant lived in Vermont. The defendant testified that he did not want to live with the plaintiff. However, before the second child was born, they were married and they moved to Woodland Avenue where they lived for eight years and where they had two more children. All of the four children are now adults.
The plaintiff's child by a prior relationship also lived with them until she became an adult.
After Woodland Avenue, they moved to Flora Boulevard, the house which was purchased in both names while Woodland Avenue and all the other pieces of property were purchased in the husband's name solely. After two years in the Flora Boulevard house, they moved to the Rowland Avenue house where they presently live. That house was purchased in only the defendant's name although the wife had to sign over her interest in the Flora Boulevard house in order to accomplish this sale. She complained to the defendant about his refusal to put her name on the deed.
Throughout the marriage and even before, the defendant treated the plaintiff somewhat contemptuously, calling her stupid to her face and speaking of her in that vein to her neighbor on Woodland Avenue who testified. He saw himself as a protector and provider of the children, not necessarily of his wife. Initially, he did not want the first child and wanted the plaintiff to obtain an abortion. When they actually went to Puerto Rico to obtain one and could not do so because she was already too far along, he then wanted the child placed for adoption. The plaintiff refused and moved out of the place they CT Page 7829 were sharing, and the defendant moved to Vermont. However, after the child was born and the defendant apparently formed an attachment to her, the marriage took place as set forth above.
The defendant attributes the breakdown of the marriage to two things: one, the plaintiff calling the police on him at the time she refused to sign over the Flora Boulevard property to him so he would buy the Rowland Road one and he, in a fit of rage, grabbed her (in 1978). The other reason for the breakdown, he said, was that he had not been a loving husband.
It seems to the court that the real reason for the breakdown is the denigrating treatment the plaintiff received from the defendant throughout the marriage. It is a wonder that she remained in the marriage this long given the way she was treated. The court, therefore, finds that the breakdown of the marriage is the fault primarily of the defendant.
Throughout the marriage both parties worked. Both parties, in addition to paychecks, also received cash for some of their services, the wife as waitress, housecleaner, cook, babysitter, etc., and the husband as a self-employed carpenter and remodeling contractor. Recently, he has been employed by a realty management organization since October of 1990. While he took that job because he said his carpentry work was declining, the fact is that he earned over $13,000.00 in ten months in 1990 and that is more than he earned in the same period of time the year before.
It is apparent to the court that the total earnings of I both parties were not reported on their income tax returns since, neither reported what they had received in cash.
During the course of the marriage, the parties acquired substantial assets in the form of real property. The defendant made all the purchases in his name except for one on Flora Boulevard which was made in both names probably because the defendant was unemployed at the time and the plaintiff was working. As a result of those purchases, the parties' assets now consist of the following:
1. A three family house at 105 Woodland Avenue, Bridgeport, appraised at $175,000.00 with a mortgage of $25,000.00 and an equity therefor of $150,000.00. This house has three apartments, two of which are presently vacant and the third brings in an income of $150.00 a month.
2. A two family house at 704-706 Black Rock Turnpike, Fairfield, valued at $160,000.00 with a mortgage of $62,700.00, and equity, therefore, of $97,300.00. CT Page 7830
3. A one family house at 324 Rowland Avenue, Fairfield, valued at $280,000.00 with a $40,000.00 mortgage and equity therefore of $240,000.00.
In addition, there are three cars in the defendant' s name and one in the plaintiff's name; to writ: in the defendant's name, a 1973 Chevrolet van valued at $400.00, a 1984 Honda valued at $4,000.00, a 1982 Oldsmobile valued at $2,000.00 and in the plaintiff's name a 1986 Plymouth Duster with a $1,500.00 equity.
It is interesting that the only liabilities that the defendant has are his attorney's fees while the plaintiff has debts due the First Constitutional Bank, Visa, and two other loans for attorney's fees. In general, their liabilities have been minimal because, as the plaintiff said, they paid their bills as they accrued.
Two of the liabilities of the plaintiff, First Constitutional Bank and Visa, were loans which she had obtained to help pay for the college education of the two girls, Erica and Elka. The defendant refused to pay for the second child's education because he did not think she was college material, and she in fact dropped out after two years. He did help to pay for the college of the first child but not entirely with the plaintiff and her brother helping to pay for that along with student loans which Erica obtained.
All of the real estate which was purchased was purchased by the defendant with no input from the plaintiff at all, and he did most of the maintenance, repair, rent collection and management of the property.
The plaintiff did some cleaning up in preparation for sale of some of the properties and also some yard work, but in general, most of the work with respect to the real estate was the defendant's. The plaintiff, on the other hand, worked some times two, some times three jobs, cleaning houses or working as a waitress. She is presently working as a waitress in Arnie's Place in Westport and from time-to-time also works on catering jobs. In addition, she cleans one house a week.
The defendant's present job, as is noted above, is with Bridgeport Mutual Management where he indicates he earns a gross wage of $420.00 a week according to his financial affidavit.
In general, the information with respect to the income of both parties is questionable. In both cases it appears to be CT Page 7831 understated.
One thing does stand out, however, and that is that the plaintiff spent all her income taking care of the family of the four children and herself together with a fifth child whom she had out of wedlock before the marriage to the defendant and who lived with the parties until she became an adult. Plaintiff's income was spent on the groceries, clothes, dental care, unreimbursed medical expenses, transportation for the children, and extra curricular activities for the children. The defendant paid the mortgage and the utilities and gave the plaintiff $40.00 a week for groceries of which he thought she must have saved some. In addition to working outside the home, the plaintiff took care of the home and the children as well as providing for her husband's needs. The court, therefore, considers that the contribution of each to the marriage was equal.
Prior to the beginning of the parties' relationship, the defendant had property in Vermont which he later sold in 1970 (after the marriage) for $9,800.00. He also had a three family house on Milne Street which he bought for $16,000.00 in July of 1967, after the birth of one child and four months before the marriage and while the plaintiff was pregnant with a second child.
He sold that house in 1972 for $25,000.00. In the meantime, he had bought the Woodland Avenue house in July of 1968 for $32,000.00. Then in 1975 he bought the Flora Boulevard house in both names for $63,000.00 and sold it in 1979 for $115,250.00. In 1979 he then bought the Rowland Avenue house.
Consequently, the parties now own three pieces of property, Rowland Avenue, Woodland Avenue and Black Rock Turnpike. They are presently living in the Rowland Avenue house. The defendant wishes to live there until the property is sold and he wishes it to be sold. The plaintiff, on the other hand, wishes to live in the Woodland Avenue property and have that property conveyed to her solely.
In addition to the real estate, the defendant also had a $10,000.00 CD which he cashed in in the summer of 1990. His explanation of the reason for doing so appeared incredible to the court, and the court finds that it was an attempt to keep that asset from being included in the marital assets during the divorce. The plaintiff, on the other hand, had received stock in a laundry owned by her brother valued at $50,000.00 in 1989. She claims not to have realized what it was but accepted it as a dying gift from her brother who was then suffering from cancer. He has since recovered, and the plaintiff testified that she has CT Page 7832 now transferred her interest in this laundry, she said, to her brother but it now appears it w: to her sister. This transfer did not take place until just before the trial in July of 1991. Consequently, the court must treat this property, also, as a marital asset.
The evidence appears to establish that both parties are equally capable of acquiring future assets. There appears to be, on the basis of the income of both parties, no reason for periodic alimony. The sum total of the value of the property appraisals, which were agreed upon by the parties, appears to be $487,300.00 as set forth above on pages five and six.
In addition, the $50,000.00 stock in the Virginia laundry must be included making a grand total of $537,300.00. The property which the defendant brought to the relationship initially in Vermont was sold for $9,800.00. He has, however, cashed a CD which was part of the marital assets which amounted to over $10,000.00 in the summer of 1990. Cashing of the CD would seem to the court to compensate for the Vermont property.
The plaintiff must be assumed to have control of the $50,000.00 stock in the laundry given the circumstances of its transfer and the time the transfer was made.
Under these circumstances and after consideration of the factors set forth in 46b-81 and 46b-82 of the General Statutes, the court makes the following findings and orders.
1. The parties were married in 1967 in Cos Cob, Connecticut.
2. The marriage has broken down irretrievably, and it is. hereby dissolved.
3. There are four adult children issue of the marriage.
4. Neither party has received public assistance and both have lived in this state for more than a year prior to the institution of this action.
5. The defendant is ordered to pay the plaintiff $15,000.00 as a partial distribution of the parties' assets and $5,000.00 as a contribution to her attorney's fees.
6. The defendant is ordered to convey to the plaintiff all his right, title and interest in the real property at 103-105 Woodland Avenue, Bridgeport, together with all the personal property presently in the buildings thereon. The conveyance from the defendant shall be subject to the first mortgage on the property which the defendant shall render CT Page 7833 current at the time of the conveyance and which the plaintiff shall assume and for which the plaintiff will hold the defendant harmless. The first floor unit of the building shall be vacant, and the defendant shall take whatever steps are necessary to see that that is so. The defendant shall transfer to the plaintiff the security deposit he is presently holding with respect to the tenants residing in this house.
7. The defendant shall give the plaintiff wife a promissory note and mortgage on 324 Rowland Avenue, Fairfield, in the amount of $50,000.00 due and payable in one (1) year without interest and subject only to the current first mortgage on the property. After the expiration of the first year, interest shall accrue at the rate of ten (10%) per cent per year and the note and mortgage shall be payable on demand. In addition, in the event of default, the note and mortgage shall provide that the defendant shall pay the plaintiff's attorney's fees and costs of collection including the attorney's fees for foreclosure of the mortgage should that occur.
8. The defendant shall retain ownership of the Black Rock Turnpike property as well as his interest in the Rowland Avenue property subject, of course, to the mortgage hereinbefore ordered as well as the current first mortgage.
9. The following items of personal property at the 324 Rowland Avenue residence shall become the sole property of the plaintiff:
 a. Master bedroom furniture, sofa and three chairs from the den, dishwasher, television set, refrigerator, washer, dryer, coffee tables and one extra bedroom set.
 b. All the remaining items of personal property in the Rowland Avenue house shall be the property of the defendant.
10. The cars listed on the affidavit shall remain the property of their registered owners.
11. Each party shall be responsible for the liabilities listed on his or her affidavit.
12. The court is not applying the guidelines because there is no alimony or support being ordered.
MARGARET C. DRISCOLL STATE TRIAL REFEREE CT Page 7834
[EDITORS' NOTE: THIS PAGE IS BLANK.] CT Page 7835
[EDITORS' NOTE: THIS PAGE IS BLANK.] CT Page 7836